The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 19, 2019

**2020COA41**

**No. 16CA1830, *People v. Lopez* — Crimes — Unlawful Sexual
Behavior — Sexually Violent Predators**

This proceeding involves the designation of a convicted sex
offender as a sexually violent predator (SVP) under section 18-3-
414.5(1)(a), C.R.S. 2019. A division of the court of appeals
considers when a trial court must determine whether an offender is
developmentally disabled. The division holds that a trial court may
not rely on a sex-offense specific evaluation to designate an offender
as an SVP unless (1) the offender does not have a developmental
disability; or (2) the offender was evaluated by a professional
qualified to evaluate adults with developmental disabilities.

COLORADO COURT OF APPEALS 2020COA41

Court of Appeals No. 16CA1830
Montezuma County District Court No. 15CR208
Honorable Todd Jay Plewe, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nicholas Ray Lopez,

Defendant-Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GROVE
Richman and Freyre, JJ., concur

Announced March 19, 2020

Philip J. Weiser, Attorney General, Christine Brady, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Mackenzie Shields, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Nicolas Ray Lopez appeals his designation as a sexually violent predator (SVP) under section 18-3-414.5(1)(a), C.R.S. 2019.  We hold that the trial court erred by (1) failing to make specific findings before designating Lopez as an SVP; and (2) relying on an evaluation that did not comply with the governing statutes and regulations.  For these reasons, we vacate the trial court's order and remand the case with instructions.

## I.     Background

¶ 2     Lopez pleaded guilty to two counts of attempted sexual assault on a child in exchange for the dismissal of five other sex assault charges, a stipulated sentence of six years in prison, and six years of sex offender intensive supervision probation.  He was required by statute to undergo a sex offense specific evaluation (SOSE) to determine treatment needs and the likelihood that he would reoffend.  § 18-3-414.5(2).  A licensed psychologist evaluated Lopez and reported on his findings.  The trial court, relying on the evaluation as well as argument by the People at the sentencing hearing, determined that Lopez was an SVP as defined in section 18-3-414.5.  Lopez appeals this designation.

## II.    Analysis

¶ 3    Lopez raises two issues on appeal.  First, he argues that the trial court violated the SVP statute and his due process rights by failing to make specific factual findings on the record regarding its determination that he was an SVP.  Second, Lopez asserts that he potentially has a developmental disability, and therefore should have been evaluated by a psychologist qualified to evaluate individuals with developmental disabilities.  Because the psychologist who evaluated him was not so qualified, he argues, the assessment did not comply with the governing statutory and administrative standards and could not be relied upon by the trial court in designating him as an SVP.  We agree with both of his contentions.

### A.    Standard of Review

¶ 4    We review and interpret section 18-3-414.5 de novo.  *Allen v. People*, 2013 CO 44, ¶ 4.  An SVP designation involves a mixed question of law and fact.  *Id.*  When reviewing a mixed question, we will defer to a trial court's factual findings absent clear error, *People v. Brosh*, 251 P.3d 456, 460 (Colo. App. 2010), but review de novo

the trial court's legal conclusions regarding whether an offender should be designated as an SVP, *Allen*, ¶ 4.

B.    SVP Statute

¶ 5    To be designated an SVP, an offender must (1) be over eighteen years of age when the offense is committed; (2) be convicted of one of an enumerated class of sexual offenses (including sexual assault); (3) have perpetrated the offense upon a victim who was a stranger to the offender or one with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) be likely to commit a similar sexual offense based upon a risk assessment screening.  § 18-3-414.5(1)(a).[1]

¶ 6    An offender who meets the first two prongs will be evaluated by a trained professional to determine if he or she is an SVP.  § 18-3-414.5.  The evaluation has two parts — the SOSE and the sexually violent predator assessment screening instrument (SVPASI).  Based on the results of the assessment, the trial court must "make specific findings of fact and enter an order concerning

---

[1] Lopez does not dispute that he meets the first two statutory criteria.

whether the defendant is a sexually violent predator." § 18-3-414.5(2); *see also People v. Torrez*, 2013 COA 37, ¶ 82. The statute does not outline specific procedures for making these findings.

### C.    Relevant Case Law

¶ 7    When deciding whether to impose an SVP designation, the trial court should start with the findings and conclusions of the SOSE and SVPASI. *Allen,* ¶ 14 (finding that "the scored Screening Instrument will . . . serve as the foundation for a trial court's SVP designation"). A trial court may, in certain circumstances, adopt the findings of the risk assessment evaluator without going through the evaluation line by line. *Torrez,* ¶ 83. Even when a defendant challenges the facts in the report, as Lopez does here, the People are not required to prove those facts with the quality of evidence required at a trial on the criminal charges themselves. *See People v. Buerge*, 240 P.3d 363, 369 (Colo. App. 2009). General findings "might suffice, or the lack of specific findings might be harmless under Crim. P. 52(a)" if the general findings are clearly supported by ample evidence in the record. *Torrez,* ¶ 84.

¶ 8    However, principles of due process, as well as the language of the statute, require that an SVP designation be based on "reliable

evidence, not speculation or unfounded allegations." *People v. Tuffo*, 209 P.3d 1226, 1231 (Colo. App. 2009) (citation omitted). Where a finding in an assessment is "unexplained, unsourced, . . . disputed," and unsupported by ample evidence, due process and section 18-3-414.5(2) require the trial court to make further factual findings before adopting the assessment. *Torrez*, ¶ 84 (quoting *Tuffo*, 209 P.3d at 1232).

### D.    The Trial Court's Factual Findings

¶ 9      At sentencing, after considering argument from both sides, the trial court ruled as follows:

> I've listened to the arguments of counsel regarding the [SVP] status.  I've reviewed the evaluation of the evaluator, plus I reviewed the Colorado [SVP] assessment screening instrument.  The offender meets the [SVP] criteria as set forth on the [SVP] screening instrument.
>
> I disagree with the arguments of counsel that somehow this was not valid or that the proper procedure was not followed.  Based upon the nature of the offense, the evaluation that I have reviewed, the pre-sentence investigation report that I have reviewed, I'll find that the defendant is [an SVP] consistent with the evaluation and I'll make [sic] finding.

¶ 10    Defense counsel objected and asked the court — pursuant to the express language of the SVP statute and the supreme court's decision in *Allen* — to "make specific findings based upon specific facts and not just generally" based on the evaluation. The People responded by arguing that, under *Torrez*, a trial court can "simply adopt the findings of the risk assessment evaluator." The trial court agreed with the People and did not make any specific findings on the record before designating Lopez as an SVP.

¶ 11    Lopez asserts that the trial court was required to explicitly determine whether he "promoted a relationship" with the victim and, in addition, make findings about the history of his residency to ensure the accuracy of his score on the sex offender risk scale (SORS). Both of these questions were disputed below, and factual findings relating to both were a necessary component of his SVP designation. § 18-3-414.5(1)(a)(III).

### 1.    "Promoted a Relationship"

¶ 12    The third prong of the SVP designation is known as the "relationship prong." It requires findings as to whether the victim was "a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of

sexual victimization." *Id.* If, "excluding the offender's behavior during the commission of the sexual assault that led to his conviction, he otherwise encouraged a person with whom he had a limited relationship to enter into a broader relationship primarily for the purpose of sexual victimization," then the offender has "promoted the relationship." *People v. Gallegos*, 2013 CO 45, ¶ 14.

¶ 13    Lopez's evaluator checked a box on the SVPASI form indicating that Lopez promoted his relationship with the victim for the purpose of sexual victimization, but the trial court did not independently address the issue in imposing the SVP designation. Lopez contends that inconsistencies in the evaluation made specific findings necessary. We agree.

¶ 14    While the SVPASI form itself permits the evaluator to simply check a box reflecting the evaluator's conclusion that the defendant did or did not "promote[] a relationship" as contemplated by the SVP statute, other portions of the form require the evaluator to list the sources on which he or she relied to reach that conclusion. So long as those sources are consistent with the evaluator's findings, they may be sufficient to support a trial court's conclusion that the defendant has satisfied the criteria set forth in the SVP statute.

¶ 15     Here, however, the evaluator's conflicting answers on the SVPASI form created ambiguity as to whether he actually concluded that Lopez satisfied the "promoted a relationship" criterion. Specifically, while the evaluator checked the box indicating that Lopez had "promoted a relationship," he also checked another box indicating his overall conclusion that Lopez "DOES NOT Meet Any Of The Above Relationship Criteria." Lopez correctly points out that these two answers cannot be reconciled. Thus, he argues, the trial court could not simply accept the evaluator's conclusion without making its own specific findings.

¶ 16     Because the evaluator's answers were internally inconsistent, and because the remainder of the record does not resolve the discrepancy, this part of the SVPASI could not be relied upon to conclude that Lopez was an SVP. Therefore, the trial court was required to make specific findings on the record with respect to the relationship prong of the SVP designation.

## 2.     Residential History

¶ 17     Lopez also argues that the trial court was required to make specific factual findings as to his score on the SORS. In particular, he argues that the evidence was insufficient to show that he resided

8

at three or more different addresses in the two years prior to his arrest and that without that evidence his risk score would have totaled seven, instead of the eight that he received. The difference is significant because, if he scored an eight or more on the SORS scale while meeting the other criteria, he would be eligible for designation as an SVP.

¶ 18 The sixth question on the SORS asks if "[t]he offender moved 2 or more times in the 2 years prior to arrest for the . . . current offense." It goes on to clarify, "[o]ffender resided at 3 or more different addresses during this time frame." The evaluator answered, "Yes." Lopez disputed this answer at the hearing, arguing that his first move was *from* his parents' house to the victim's home, and his second move was *back* to his parents' house. Thus, Lopez argues, while he did move twice in the two years preceding his arrest, he did not have three different addresses; therefore, the answer to the last question should have been "No," and his total SORS score should have been seven.[2]

_____

[2] In Part 3 of the SVPASI, the evaluator must determine whether the offender (1) has a prior sex crime conviction; (2) scored eight or more on the SORS; or (3) "meets mental abnormality criteria" as

9

¶ 19    The People contend that the record establishes that Lopez lived at three or more different addresses: (1) his parents' house; (2) the victim's home (where he resided when he committed the assaults); and (3) "whatever residence he moved to after" leaving the victim's home. However, the People offer no record support for their suggestion that Lopez did not move back in with his parents after moving out of the victim's house. And although it is not definitive, the record suggests that may have been what Lopez did.

¶ 20    A division of this court encountered an analogous situation in *Tuffo*, 209 P.3d at 1230-31. One of the factors considered in the SORS in that case was whether the offender failed the first or second grade. *Id.* Although the evaluator indicated that the offender had failed the first grade, defense counsel argued, and the People did not challenge, that the offender had completed first grade in a "special education sort of classroom." *Id.* at 1231. Despite this

---

defined by statute. To be identified as an SVP, the offender must satisfy at least one of these conditions. Here, the evaluator found that Lopez neither met the mental abnormality criteria nor had a prior sex crime conviction. Accordingly, a score of less than eight on the SORS would have rendered Lopez ineligible for the SVP designation. We acknowledge, however, that this result could change if Lopez is re-evaluated after remand.

discrepancy, the trial court still made no findings of fact, and instead made a general finding that the offender was an SVP. *Id.* Because the offender would not have had the requisite score on the SORS without that factor, the supreme court found that the trial court's general SVP finding "did not satisfy statutory and due process requirements," and remanded for specific findings on the contested factual issues. *Id.*

¶ 21 We find *Tuffo* persuasive. Without an explicit finding that Lopez lived at three different residences in the past two years, he would not have had an SORS score of eight and would not have been eligible for an SVP designation. And while the trial court found that the defendant qualified as an SVP "consistent with the evaluation," Lopez's residential history was a contested factual issue that the SOSE did not resolve. We therefore conclude that the SVP statute and due process required the trial court to make specific factual findings on this issue.

E. Evaluation of Sex Offenders with Developmental Disabilities

¶ 22 Lopez contends that his SOSE did not follow standards promulgated by the Sex Offender Management Board (SOMB).

11

¶ 23    Section 16-11.7-103(4)(a), C.R.S. 2019, directs the SOMB to develop standards "to evaluate and identify adult sex offenders, including adult sex offenders with developmental disabilities." The SOMB has done so by adopting standards for the "systematic management and treatment of adult sex offenders." *See* Sex Offender Management Board, *Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* 3 (rev. Nov. 2011) (SOMB Standards).[3] As relevant here, section 2.000 of the SOMB Standards establishes the parameters for conducting sex offense-specific evaluations, *id.* at 22-35, and section 4.000 lays out the necessary qualifications for "providers, evaluators, and polygraph examiners working with sex offenders," *id.* at 50-77. Providers who evaluate offenders with

_____

[3] Lopez was designated as an SVP in July 2016. At that time, the 2011 revision was the most recent version of the SOMB Standards. In their briefing, however, both parties rely on the SOMB's 2018 version of the Standards. Although there are minor differences between the two, both versions adopt the definitions of "Developmental Disability" and "impairment of general intellectual functioning" set forth in the Code of Colorado Regulations. *See* Dep't of Health Care Policy & Fin. Reg. 8.600.4(A)(1), 10 Code Colo. Regs. 2505-10. Because Lopez was designated as an SVP in 2016, all references to the SOMB Standards in this opinion rely on the 2011 version.

12

developmental disabilities must have specific qualifications and submit an application that demonstrates their competency to work with this population. *Id.*

### 1. Lopez Was Potentially Developmentally Disabled

¶ 24 The SOMB Standards define "Developmental Disability" as "a disability that is manifested before the person reaches twenty-two [years] of age, which constitutes a substantial disability to the affected person, and is attributable to . . . neurological conditions when such conditions result in impairment of general intellectual functioning." *Id.* at 11. "Impairment of general intellectual functioning," in turn, "means that the person has been determined to have an intellectual quotient equivalent which is two or more standard deviations below the mean (70 or less assuming a scale with a mean of 100 and a standard deviation of 15)." *Id.* at 11-12. "The standard error measurement of the instrument should be considered when determining the intellectual quotient equivalent." *Id.* at 12.

¶ 25 The evaluator reported three IQ scores for Lopez: a verbal scale IQ of 90, a performance scale IQ of 66, and "a full-scale IQ of 76 plus or minus seven on the [Weschler Abbreviated Standard of

13

Intelligence]."  Taking the margin of error into account, Lopez's full-scale IQ, as tested, appears to have been between 69 and 83.  The low end of this scale is within the applicable range for "impairment of general intellectual functioning."  SOMB Standards at 11-12.

¶ 26    Despite this finding — and the evaluator's observation that Lopez's "statements of 'understanding' should be questioned" because he is "intellectually dull" — the evaluator never definitively stated that Lopez did or did not have a developmental disability.  Nor was the evaluator specially qualified to work with developmentally disabled offenders.

2.    This Determination Cannot Wait Until After the SOSE

¶ 27    The People maintain that Lopez "presented no evidence to the sentencing court that he had ever been diagnosed as developmentally disabled" and argue further that the SOSE did not classify him as developmentally disabled.  However, at the hearing, both sides and the trial court acknowledged that Lopez "potentially" had a developmental disability.  The People also concede in their answer brief that the evaluator identified Lopez as "someone who *might* need treatment tailored to developmentally disabled" individuals.

14

¶ 28   Still, the People assert that an SOSE is not the time to diagnose an individual with a developmental disability. They argued at the hearing that Lopez "could be reevaluated at DOC. He could be reevaluated on parole . . . when evaluating the need for specific types of treatment." The court ultimately accepted the People's argument on this issue and concluded that "[t]he fact that someone has a potential developmental disability doesn't mean the Court can't proceed based upon the [SOMB] evaluation [of] someone who's not approved to conduct those for developmental disabilities." We disagree.

¶ 29   Section 18-3-414.5(2) requires the trial court to make specific findings of fact "[b]ased on the results of the assessment." Inherent in this mandate is the assumption that the "assessment" was completed in compliance with the SOMB Standards. The SOMB Standards make clear that the evaluation of an offender with a developmental disability is "a highly specialized field" that requires special expertise on the part of the evaluator to ensure accurate outcomes. SOMB Standards at 4.

¶ 30   Specific guidelines for the assessment of offenders with developmental disabilities — labeled "DD/ID" — are included in

15

every section of the SOMB Standards. They address different issues that arise when evaluating and treating individuals with disabilities and explain methods to be used in those situations. The intent of these standards is to address "the specific needs . . . of sex offenders with developmental disabilities." *Id.*

¶ 31    We do not conclude here that Lopez *is in fact* developmentally disabled as defined by the SOMB Standards, statute, and regulations. That is a question for the trial court to resolve on a more complete record. However, we do hold that — based on section 18-3-414.5 and the SOMB Standards — a trial court cannot designate an offender with a potential developmental disability as an SVP based on an SOSE and SVPASI unless either (1) the offender does not have a developmental disability; or (2) the offender was evaluated by a professional qualified to evaluate adults with developmental disabilities. Where, as here, the evaluator's assessment does not definitively establish whether the offender has an "impairment of general intellectual functioning" under the SOMB Standards, a trial court must make findings on that point before determining that the offender qualifies as an SVP.

16

¶ 32    We also disagree with the People's assertion that determining whether an offender has a developmental disability can wait until the individual is being "managed, monitored, and treated."  The People claim that the statute "allows for [Lopez] to be reevaluated . . . for treatment purposes."  It may *allow* for that, but the initial SOSE must be tailored to the individual offender "[b]ecause of the importance of the information to subsequent sentencing."  *Id.* at 22.  The standards and guidelines on the subject would be rendered superfluous if the probation department and SOMB could avoid the question altogether until after the SOSE.

## III.    Conclusion

¶ 33    The trial court's order is vacated and the case is remanded for a hearing to determine whether Lopez is developmentally disabled. If so, Lopez should be reassessed consistent with SOMB standards. Additionally, the trial court must make specific factual findings regarding both the "promoted a relationship" criterion and the SORS score to determine whether the SVP designation is appropriate.

JUDGE RICHMAN and JUDGE FREYRE concur.