22CA2024 Peo v Hunter 07-25-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA2024 Garfield County District Court No. 21CR228 Honorable John F. Neiley, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Aubrey James Hunter, Defendant-Appellant. ORDER AFFIRMED Division IV Opinion by JUDGE PAWAR Navarro and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 25, 2024 Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Mackenzie R. Shields, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Aubrey James Hunter, pleaded guilty to attempted sexual assault and child abuse resulting in serious bodily injury. The district court sentenced Hunter to twenty-five years in prison. At the sentencing hearing, the court found that Hunter met the statutory requirements of and designated him as a sexually violent predator (SVP). Hunter appeals that designation. We affirm. I. Contentions on Appeal ¶ 2 Hunter contends that the district court erred by failing to make findings of fact regarding his risk of recidivism before designating him an SVP. He specifically challenges the Sex Offender Risk Scale (SORS) score he received on the SVP risk assessment screening instrument (SVPASI), arguing that the district court erred (1) by deferring to the SORS score without making factual findings because the score was based on insufficient and disputed evidence and (2) because the score does not accurately predict recidivism as contemplated by the SVP statute. We disagree with Hunter’s contentions. II. Applicable Law and Standard of Review ¶ 3 Pursuant to sections 16-11.7-101 and -103, C.R.S. 2023, the General Assembly created the Sex Offender Management Board 
2 (SOMB) to create and implement a program that establishes evidence-based standards to evaluate, identify, treat, manage, and monitor sex offenders. See Allen v. People, 2013 CO 44, ¶ 8. Among other duties, the SOMB is tasked with developing the SVPASI to assist district courts in determining the likelihood that an adult sex offender will recidivate. See § 16-11.7-103(4)(d); Allen, ¶ 8. ¶ 4 Under the SVP statute, a district court may designate an offender an SVP when the offender (1) was eighteen years of age or older as of the date of the offense; (2) was convicted of an enumerated sexual offense (one of which is attempted sexual assault); (3) committed the offense against a victim who was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) is likely to recidivate by committing an enumerated sexual offense based on the results of the SVPASI. § 18-3-414.5(1)(a)(I)-(IV), C.R.S. 2023; see also Allen, ¶ 6. The district court must make findings of fact and enter an order as to whether an offender is an SVP. § 18-3-414.5(2). 
3 ¶ 5 Part 3B of the SVPASI is the SORS, which is the actuarial risk assessment scale a district court is required to consider in making its findings regarding the offender’s risk to recidivate. See § 18-3-
414.5(1)(a)(IV); People v. Williamson, 2021 COA 77, ¶ 7. According to the SORS form, the score is calculated using this formula: (number of adult cases x 2.1) + (number of juvenile cases x 3.1) + (number of cases with a revocation x 2.2) – (earliest sex offense filing age x .23). The form indicates that a score of 22 or more “reflects that the individual falls into a risk category with a 50-60% likelihood of a new sex or violent crime court filing within 8 years.” ¶ 6 The district court “should give substantial deference” to the SVPASI. Allen, ¶ 5. The court “should not re-score the [SVPASI],” Allen, ¶ 16, and may adopt its findings without going through it line by line, People v. Lopez, 2020 COA 41, ¶ 7. General findings by the court may suffice, or the lack of specific findings might be harmless, if the findings are clearly supported by ample evidence. Id. However, where a finding in the SVPASI “is ‘unexplained, unsourced, . . . disputed,’ and unsupported by ample evidence, due process and section 18-3-414.5(2) require the [district] court to 
4 make further factual findings before adopting the assessment.” Id. at ¶ 8 (quoting People v. Torrez, 2013 COA 37, ¶ 84). ¶ 7 A district court’s SVP designation presents a mixed question of law and fact. Allen, ¶ 4. We defer to the court’s factual findings but review de novo whether those factual findings support an SVP designation. Id. III. Sufficient Evidence Supported the SORS Score A. The District Court’s Findings and the SORS Score ¶ 8 The district court made the following findings regarding Hunter’s SVP designation: Pursuant to statute, the Court is required to go through a number of considerations and factors to decide whether the defendant meets the sexually violent predator assessment. The first is whether he is 18 years of age or older, tried as an adult; and certainly we don’t have any issue with that. The conviction occurred on or after July 1st, 1999, no dispute about that. And then whether the person’s score is 22 or more on the sex offender risk scale. I do understand [defense counsel’s] argument about how that is calculated, it’s sort of an arcane formula in some respects. It’s a factor that’s numerically calculated based on the total number of adult cases, which in this case they’ve indicated is 15. Total number of juvenile cases is two, total number of cases containing a revocation from probation or 
5 Community Corrections is one. The earliest sex offense filing age is 27. When you run the numbers on that, the total score comes out to be 33.69 and that is the sex offender risk scale criteria. The note in that is less than 5 percent of the individuals assessed for this assessment score 22 or higher. The other factors to consider are one that again is undisputed that in this case the victim was a stranger. We don’t have findings that there was an establishment of a relationship or anything like that. I understand the imperfections in scoring instruments like this. They are based at least in theory on evidence and reports and studies that have been done to determine these calculations. I’m not in a position, I’m not a scientist to second guess those. . . . . Based on the information that I have, I do think that the defendant meets the definition of a sexually violent predatory [sic] and the Court will make that finding and will [include] that as part of its judgment today. ¶ 9 According to the record, Hunter’s SORS score, on which the district court relied, was determined to be 33.69, which placed him above a score of 22 and qualified him as likely to recidivate. The evaluator calculated Hunter’s score, in part, by finding that he had fifteen qualifying adult cases in his criminal history. Hunter 
6 challenges this score, arguing that the evidence supporting the score was insufficient and disputed because “neither the [SVPASI] form itself nor the presentence report support a factual basis for concluding that [he] . . . had 15 qualifying adult case filings.” He further asserts that, under Lopez, the court was required to make additional factual findings because the facts supporting the SORS score were disputed. B. Preservation ¶ 10 The People argue that Hunter failed to preserve this argument for appeal and that we should therefore review for plain error. See Hagos v. People, 2012 CO 63, ¶ 14 (we review unpreserved arguments for plain error). We disagree. ¶ 11 At sentencing, defense counsel objected to the use of the SORS instrument “as a whole,” calling it “off the wall” and “all over the place.” Counsel more specifically objected to the number of qualifying adult cases included in Hunter’s SORS calculation: I started to do some math, and I think of note, what puts Mr. Hunter over the edge of that 22 number that puts it above that scale is a number of adult cases he has had. That does not take into account the number of cases that have been dismissed, it does not take into account the level of offenses, it barely takes 
7 into account the age of which those offenses happened. But when you look closely at Mr. Hunter’s history, two of those offenses are underaged alcohol offenses that count in that scale, one is a reckless driving. There [are] multiple Class 3 misdemeanor offenses and drug possession offenses. I started just to play with the math a little bit. If you take away I think it’s six, six total cases from those adult numbers, that drops them down below that 22 threshold. When you consider some of these cases were dismissed, or not even petty offenses there, minor in possession cases, that drops him below that threshold and I think that’s wrong. ¶ 12 Ultimately, the district court accepted the SORS score and found that Hunter met the recidivism criterion. Based on this record, the court was presented with an adequate opportunity to address whether Hunter had fifteen qualifying adult cases for the SORS formula, and it did so by accepting the SORS score as calculated. See Martinez v. People, 2015 CO 16, ¶ 14 (“An adequate objection allows the [district] court a meaningful chance to prevent or correct the error and creates a record for appellate review.”). Therefore, this issue is adequately preserved. 
8 C. Analysis ¶ 13 Per the SOMB’s handbook for the SVPASI, the total number of adult cases filed in the SORS formula includes “district and county cases (including Denver County) filed in Colorado or another state in which the age at offense was 18 or older, or less than 18 and filed as an adult,” including “cases with any misdemeanor or felony charge, including traffic, regardless of conviction, excluding [the current] case.” Colorado Sex Offender Management Board, 2021 SVPASI Handbook: Sexually Violent Predator Assessment Screening Instrument (SVPASI) 13 (Jan. 2021), https://perma.cc/2V8E-7L7R (SVPASI Handbook). ¶ 14 Hunter’s criminal history listed in his presentence investigation report (PSI) shows seventeen total adult cases — ten from Colorado and seven from California. ¶ 15 Of the Colorado cases, he claims that three should not have been included in the SORS calculation. First, he challenges the inclusion of a traffic offense from 2019. However, that traffic offense was for careless driving resulting in injury, which is, and was at the time, a class 1 misdemeanor traffic offense. See § 42-4-1402, C.R.S. 2023. The SVPASI Handbook specifically 
9 includes misdemeanor traffic offenses as qualifying adult cases. Therefore, Hunter’s 2019 traffic offense was properly included in the SORS score. ¶ 16 Hunter next challenges the inclusion of two offenses in Colorado (occurring in 2012 and 2013) for underage possession and consumption of alcohol, which is, and was at the time, an unclassified petty offense. See § 18-13-122(3)(d), C.R.S. 2023. True, the SVPASI Handbook indicates that only cases with a misdemeanor or felony charge are to be included. But the record suggests that these two petty offenses were not included in the calculation, since the number of qualifying adult case filings was fifteen out of a possible seventeen total cases. ¶ 17 Of the seven California cases, Hunter argues that “only one included a case number, signifying a qualifying filing.” However, the SVPASI Handbook directs evaluators to “only include cases that have been verified through criminal history system checks.” SVPASI Handbook 13. The record contains no evidence that this verification did not occur here for purposes of collecting Hunter’s criminal history for the PSI. 
10 ¶ 18 Furthermore, at no point did Hunter dispute his criminal history reflected in the PSI. In fact, before sentencing, defense counsel gave notice of a correction to the PSI, which was unrelated to Hunter’s criminal history. And counsel reiterated only that single correction at sentencing. ¶ 19 Accordingly, the record supports the use of fifteen adult case filings in the SORS formula. Furthermore, although the facts supporting the SORS score were disputed, the district court did not err by deferring to the SORS score to determine that Hunter met the recidivism criterion because the score was supported by ample evidence. See Lopez, ¶¶ 7-8. IV. The SORS Score’s Prediction of Recidivism ¶ 20 Hunter also contends that the district court erred by deferring to the SORS score without making additional factual findings because the score does not accurately predict recidivism as contemplated by the SVP statute. He specifically claims that the SORS score does not “exclusively show the likelihood of someone to commit a qualifying sex offense, as required by the [SVP] statute,” but instead includes risk of recidivism for other violent, non-sex related offenses. Following the reasoning adopted by two other 
11 divisions of this court, we reject this contention. Consequently, the district court was not required to make additional factual findings. A. Preservation ¶ 21 The People again argue that Hunter failed to preserve this argument for appeal and that we should therefore review for plain error. See Hagos, ¶ 14. However, we need not address that argument because we conclude that there was no error, plain or otherwise. B. Analysis ¶ 22 In People v. Brosh, the defendant argued that “the SORS does not meet the statutory requirement for a ‘risk assessment screening instrument’ under section 18-3-414.5(1)(a)(IV)” because it “does not determine whether a defendant is likely to reoffend by committing any of the specifically enumerated offenses under the specified circumstances.” People v. Brosh, 251 P.3d 456, 459-60 (Colo. App. 2010) (quoting § 18-3-414.5(1)(a)(IV)). The division rejected the argument by, among other things, citing to the 2008 version of the SVPASI Handbook outlining the factors that were considered when creating the SORS, including the “risk of arrest for violent crimes as a ‘reasonable proxy’ in measuring recidivism of sex offenders.” Id. 
12 at 460. The division concluded that, in light of those considerations and the legislative scheme, the SOMB satisfied the objectives and criteria in section 16–11.7–103(4)(d) for developing the SVPASI. Id. The division in turn rejected the defendant’s contention that the SORS was invalid because it failed to assess the requisite risk of recidivism. Id. ¶ 23 Similarly, in People v. Mendoza, the defendant argued that, “contrary to the dictates of section 16-11.7-103(4)(d), the SVPASI does not predict likely future commission of an SVP offense but, instead, only identifies offenders who are likely to fail treatment or be rearrested for non-sexual violent crimes.” People v. Mendoza, 313 P.3d 637, 641 (Colo. App. 2011). The division rejected that argument and, agreeing with Brosh, “conclude[d] that, based on the [SOMB’s] research, the SVPASI was not invalid for lacking sufficient bases upon which to predict the likelihood of committing a future SVP offense.” Id. at 641-42. ¶ 24 Because we agree with the analysis in Brosh and Mendoza, we likewise conclude that Hunter’s argument that the SORS does not accurately predict recidivism fails. We acknowledge that the Brosh and Mendoza divisions upheld the 2008 SORS instrument and that 
13 Hunter was evaluated under the 2018 version. But Hunter has not presented any argument or evidence demonstrating that the version of the SVPASI or the SORS instrument used to evaluate him were meaningfully distinguishable from the versions analyzed in Brosh and Mendoza. We see no legitimate reason to decline to follow the holdings in those cases. See § 16-11.7-103(4)(d) (The SOMB shall “revise, as necessary, the risk assessment screening instrument . . . .”); Allen, ¶ 16 (“The SOMB develops the Screening Instrument using the most up-to-date sex offender risk assessment research . . . .”). V. Disposition ¶ 25 The order is affirmed. JUDGE NAVARRO and JUDGE JOHNSON concur.