23CA1244 Peo v Clark 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1244
Boulder County District Court No. 22CR377
Honorable Patrick D. Butler, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Randolph Scott Clark,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GRAHAM*
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kevin M. Whitfield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1       Defendant, Randolph Scott Clark, appeals his sexually violent predator (SVP) designation ordered by the trial court.  We affirm.

## I.       Background

¶ 2       In 2021, Clark was arrested for criminal conduct related to four victims, including sex offenses against one juvenile victim — P.B.  Clark ultimately pleaded guilty to two counts of first degree assault; human trafficking – sexual servitude; and attempted sexual assault on a child.  Before sentencing, an evaluator conducted an SVP assessment and psychosexual evaluation of Clark.  The evaluator concluded that Clark met the statutory SVP requirements, including the "relationship requirement" by finding that Clark and P.B. were "strangers" and that Clark "established a relationship" with P.B. "primarily for the purpose of sexual victimization."

¶ 3       Clark objected to the evaluator's finding about the relationship criteria, arguing that he did not meet either the "stranger" or "established relationship" requirement.  He requested a hearing on the issue if the court disagreed.  The court addressed Clark's objection at sentencing and allowed the prosecution to file a written response.  As part of her request, the prosecutor stated that her

1

response would provide "the factual information, so that the Court has the ability to review [the information] and make factual findings and review the legal argument" before determining whether the requested hearing was necessary.

¶ 4     The prosecutor's written response incorporated facts from three of P.B.'s interviews with investigators, the SVP assessment, and the psychosexual evaluation and argued that the court should find that Clark met the SVP criteria.  The court agreed, noting that its "analysis [wa]s consistent with the [prosecutor's] response," and designated Clark an SVP.

¶ 5     On appeal, Clark contends that the trial court erred by (1) failing to make specific findings before designating Clark an SVP; and (2) finding that Clark met the SVP criteria because there was insufficient evidence to establish that he was a stranger to P.B. *or* that he had established a relationship with P.B. for the primary purpose of sexual victimization.  We address and reject each contention in turn.

II.     Standard of Review and Applicable Law

¶ 6     We review a trial court's SVP designation as a mixed question, deferring to the trial court's factual findings when they're supported

by the record and reviewing de novo the legal conclusions concerning the SVP designation. *Allen v. People*, 2013 CO 44, ¶ 4.

¶ 7    In Colorado, an SVP means an offender who is likely to commit one or more enumerated sexual offenses in the future. § 18-3-414.5(1)(a)(IV), C.R.S. 2024. An SVP risk assessment must be conducted when an offender is convicted of any of these enumerated offenses, including attempted sexual assault on a child. § 18-3-414.5(1)(a)(II)(d), (2). Four statutory requirements must be met for a SVP designation. The offender must (1) be over eighteen years of age when the offense is committed; (2) be convicted of one of the enumerated sexual offenses (including attempted sexual assault on a child); (3) have perpetrated the offense upon a victim who was a stranger to the offender or one with whom the offender established or promoted a relationship primarily for sexual victimization; and (4) be likely to commit a similar sexual offense based upon an SVP assessment. § 18-3-414.5(1)(a). Then, "[b]ased on the results of the assessment, the court shall make specific findings of fact and enter an order concerning whether the defendant is [an SVP]." § 18-3-414.5(2).

¶ 8     When making this decision, a trial court should start with the findings and conclusions of the assessment. *See Allen*, ¶ 14 ("[T]he scored [risk assessment] will accordingly serve as the foundation for a trial court's SVP designation."). A trial court may adopt the findings of the risk assessment without going through the evaluation line by line, *People v. Torrez*, 2013 COA 37, ¶ 83, unless the assessment is "unexplained, unsourced, and disputed," *People v. Tuffo*, 209 P.3d 1226, 1232 (Colo. App. 2009). And even if a defendant disputes certain facts in the assessment, the prosecution is not required to prove those facts "with the quality of evidence required at a trial on the criminal charges themselves." *People v. Lopez*, 2020 COA 41, ¶ 7. In other words, general findings might suffice, or the lack of specific findings might be harmless, if the general findings are clearly supported by ample evidence in the record. *Id.*

### III.    Discussion

### A.    Preservation

¶ 9     At the outset, we reject the People's argument that Clark's objection to the SVP designation did not include an objection to the trial court's lack of specific findings.

4

¶ 10    In his written objection, Clark specifically objected to the entirety of the SVP designation based on the evaluator's finding that Clark met the "stranger" and "established relationship" criteria and moved the court to find against an SVP designation or, alternatively, to "hold a hearing" on the issue. On appeal, it's clear that Clark requested a hearing based on his belief that the trial court would make specific factual findings regarding the relationship requirement.

¶ 11    Accordingly, Clark's objection to the entire question of his SVP designation preserved the related issue of the sufficiency of the court's findings, and we address that issue on appeal. *See People v. Coughlin*, 304 P.3d 575, 582 (Colo. App. 2011) ("Even if an objection to evidence does not specifically identify the rule underlying the objection, it is nonetheless sufficient to preserve an issue for appeal if the objecting [party] presents arguments or utilizes language that alerts the trial court to the impending error.").

## B.    Sufficient Findings

¶ 12    Clark first contends that the court's general findings were insufficient as a matter of law to designate Clark an SVP. We disagree.

## 1. Additional Background

¶ 13    In her written response, the prosecutor incorporated evidence based on three forensic interviews investigators conducted with P.B., the SVP assessment, and Clark's psychosexual evaluation. Based on this evidence, the court could reasonably infer the following:

- Clark added P.B. on Snapchat.

- P.B. believed Clark was a sugar daddy or pimp.

- Clark met with P.B. several times, and, nearly every time they met, Clark engaged in sexual contact with P.B. — sometimes in exchange for money.

- Clark exchanged money with P.B. for nude pictures of herself.

- Clark met P.B. at a hotel, gave her marijuana, sexually assaulted her, and recorded the assault without P.B.'s knowledge.

¶ 14    Further, the evidence before the court indicated:

- P.B. was twelve or thirteen when Clark had sexual contact with her.

- Clark was over eighteen, around his mid-thirties, when he had sexual contact with P.B.

- Based on the SVP assessment, the evaluator considered Clark likely to commit a similar sex offense in the future.

- Clark had committed similar sex offenses in the past.

### 2. Analysis

¶ 15 Because this evidence has record support, Clark's SVP assessment is not unexplained or unsourced, and the court's general agreement with the prosecutor's written response sufficiently supports Clark's SVP designation.

¶ 16 The trial court was privy to the arrayed evidence, and, as stated in its order finding Clark an SVP, the court did its own analysis based on the evidence presented in the prosecution's response. In other words, the court adopted the findings and conclusions in the SVP assessment — findings that were supported by ample evidence in the record. *See People v. Cook*, 197 P.3d 269, 281 (Colo. App. 2008) (an SVP assessment can be relied on by the court when determining whether a defendant meets the SVP requirements under statute).

¶ 17     Although Clark disputes that he established a relationship with P.B. primarily for the purpose of sexual victimization under section 18-3-414.5(1)(a), as we address more fully below, the record, the SVP assessment, and Clark's psychosexual evaluation amply support a general finding that Clark met this criterion. The evaluator used police reports, official records and documentation, and P.B.'s interviews as the source for his assessment findings. And based on his findings, he concluded that the established relationship criterion had been met.

¶ 18     Because the sources the evaluator used were consistent with an SVP designation, and because there was ample record support for this designation, the court's general finding is sufficient. *See Lopez*, ¶ 13 (As long as the sources an evaluator uses "are consistent with the evaluator's findings, they may be sufficient to support a trial court's conclusion that the defendant has satisfied the criteria set forth in the SVP statute."); *see also Torrez*, ¶ 84 (a court's general findings may suffice if there is ample evidence in the record supporting an SVP finding).

¶ 19     Buttressing these general findings, the same evaluator conducted a psychosexual evaluation of Clark, which was in the

record. In this evaluation, the evaluator found that Clark is more likely than others to "be manipulative, lack impulse control, [and] have difficulty tolerating frustration"; suggested that Clark's relationships with others may be "superficial"; and warned that Clark's self-reports regarding his conduct related to P.B. should be viewed with caution because he displayed moderate denial about whether he committed a sex offense against P.B. and generally is "prone to being manipulative." Further, the evaluator concluded in both the SVP assessment and the psychosexual evaluation that Clark's "long-term risk for sex offense recidivism [is] high."

¶ 20 Consequently, we perceive no error in the court's general finding and analysis designating Clark an SVP. We now turn to Clark's second contention.

## C. Established Relationship

¶ 21 Clark contends that there was insufficient evidence to support the finding that he established a relationship with P.B. primarily to sexually victimize her. Assuming without concluding that Clark was not a stranger to P.B. at the time of the attempted sexual assault, we perceive no error with the court's SVP designation because ample evidence in the record supports the finding that

Clark established a relationship with P.B. primarily to sexually victimize her.

¶ 22   Regarding the third requirement of section 18-3-414.5(1)(a), in relevant part, an offender establishes a relationship with a victim primarily for sexual victimization when the offender "create[s], start[s], or beg[ins] a relationship primarily for that purpose." *People v. Gallegos*, 2013 CO 45, ¶ 1.

### 1.   Clark's Arguments

¶ 23   Clark argues that because (1) P.B.'s friend introduced Clark to P.B.; (2) Clark initially gave money to P.B. without asking for anything in return; and (3) Clark believed P.B. was eighteen when he started a relationship with P.B., the evidence suggests that his relationship with P.B. was independent from the primary purpose of sexual victimization.[1]  Importantly, Clark never explains the reason why he established a relationship with P.B.  Instead, he simply argues that the purpose was "independent" of sexual victimization.

---

[1] Although Clark frames his contention as one of sufficiency, his specific argument is that certain evidence *conflicts* with a finding that the established relationship requirement had been met, rather than an argument that there is an absence of evidence.  That said, we nevertheless address his claims.

¶ 24    In *Gallegos*, the supreme court held that the defendant did not "establish a relationship" under the SVP statute because he had been living with the victim, his live-in girlfriend's daughter, for three years before the incident and interacted with her as any stepparent would during that time. *Gallegos*, ¶¶ 3-4, 13. The court concluded that "[n]othing in the record suggest[ed] that [the defendant] created, started, or began his relationship with the victim for the purpose of sexual victimization"; rather, he had "maintained a stepparent-like relationship with the victim for purposes unrelated to sexual victimization." *Id.* at ¶ 13.

¶ 25    Unlike the defendant in *Gallegos*, Clark talked with P.B. infrequently and remotely for only a few months before he began sexually victimizing her, with the first instance occurring merely after their second in-person encounter. And, whereas the defendant in *Gallegos* had an independent basis for his relationship with the victim — dating the victim's mother and acting like a stepparent to the victim — there is no evidence here to suggest that Clark had any other reason for establishing a relationship with P.B., who was twelve or thirteen at the time, *other than* to sexually victimize her. Indeed, the evidence in the record suggests that the

central purpose of their relationship was the sexual victimization of P.B.

¶ 26    Clark's behavior resembles that of the defendant in *People v. Ehlebracht*, 2020 COA 132.  In *Ehlebracht*, the defendant began an online conversation with the victim, then picked her up and brought her back to his apartment, where he gave her alcohol and sexually assaulted her.  *Id.* at ¶ 34.  A division of this court considered the defendant's conduct ample evidence that he established a relationship with the victim for the primary purpose of sexual victimization.  *Id.*  Clark may have waited until after his first few encounters with P.B. before he sexually victimized her, but even so, Clark's withholding sexual contact for merely a few months or a few meetings before engaging in the same pattern of conduct as the defendant in *Ehlebracht* does not persuade us that he established a relationship with P.B. for a reason other than to sexually victimize her.

¶ 27    We are likewise unpersuaded by Clark's argument that he was introduced to P.B.  Clark argues that evidence showing he and P.B. were introduced through P.B.'s friend weighs against a finding that the established relationship criterion was met.  It is true that P.B.'s

friend introduced Clark to P.B., but it was Clark who first reached out to P.B. directly via Snapchat. Even if Clark and P.B. were introduced by P.B.'s friend, the evidence shows that Clark promptly acted to seal his relationship with P.B. and soon after began to sexually victimize her.

¶ 28 Next, Clark argues that evidence showing he first freely offered P.B. gifts and money weighs against the court's finding. However, the record shows that, after a brief period of "freely" offering money and gifts to P.B., Clark started to condition his gifts on sexual acts.

¶ 29 Further, the speed at which Clark demanded increasingly more sexual acts from P.B. suggests that his gifts were not freely given. For their first meeting, P.B. told investigators that Clark ordered a Lyft to take P.B. to a hotel, where they talked and he bought her food. In the second meeting, P.B. stated that they just talked, but he gave her $100. After that, however, Clark began asking P.B. for oral sex and nude pictures in exchange for money, and nearly all their subsequent encounters involved some form of sexual victimization against P.B. This is unlike the situation in *Gallegos*, where the defendant lived in the same house and maintained a stepparent-like relationship with the victim for three

13

years before he sexually assaulted her. Rather, here, the evidence suggests Clark sought to sexually victimize P.B. from the outset.

¶ 30    Last, Clark argues that his belief that P.B. was eighteen weighs against a finding that the established relationship criterion was met. In our view, Clark's insistence that he believed P.B. was eighteen at the time tends to show that he intended his relationship with P.B. to be sexual. And broadly, being mistaken about a victim's age is not a defense to attempted sexual assault on a child. *See* § 18-1-503.5, C.R.S. 2024. We see no reason why the mere belief that P.B. was eighteen at the time, especially in light of section 18-1-503.5, would be an indicium against the established relationship criterion for Clark, rather than one in favor of the criterion being met.

### 2. Evidence Showing Clark Established a Relationship with P.B. Primarily for the Purpose of Sexual Victimization

¶ 31    Based on our review of the record, there is ample evidence indicating that Clark established a relationship with P.B. for the primary purpose of sexual victimization.

¶ 32    First, it's important to note that Clark pleaded guilty to attempted sexual assault on P.B. and had been convicted of

14

numerous related offenses in the past — including pimping; unlawful sexual contact – without consent; and failure to register as a sex offender.  As such, the record indicates that Clark was *already* aware of the kind of conduct that constitutes sexual victimization before he began to sexually victimize P.B. who, as mentioned, was twelve or thirteen at the time Clark victimized her. *See Ehlebracht,* ¶¶ 34-35 (concluding that the twenty-nine-year-old defendant's prior convictions involving sex with minors supported the district court's determination that the defendant established a relationship with the fourteen-year-old victim primarily for sexual victimization).  And Clark's guilty plea was based in part upon a factual basis showing that Clark provided P.B. marijuana, P.B. became so high that she could not see or stand, Clark sexually assaulted her, and he recorded the incident without P.B.'s knowledge.

¶ 33     Next, P.B.'s interviews with investigators show that Clark exhibited possessive, controlling, and manipulative behavior against P.B. throughout the entirety of his contact with her.  P.B. told investigators that Clark would get angry with her if he found out that she had male friends her own age and once told P.B. that she

was "only his."  P.B. also described an incident to investigators where Clark became "visibly angry" and started "cussing" and "flipping out" when she could not meet him and told investigators that Clark exhibited similar behavior "many times before." Relatedly, Clark would often display certain fatherly attributes around P.B. or inquire about P.B.'s father.  On this point, one of the forensic interviewers made a note suggesting that, based on her experience with sexual exploitation cases, Clark exploited P.B.'s relationship with her father and Clark's own role as an older male as part of a grooming technique against P.B.

¶ 34    Despite Clark's argument to the contrary, Clark's behavior in this case, in conjunction with his history of predation, weighs in favor of the court's finding that he established a relationship with P.B. primarily for the purpose of sexual victimization.  Accordingly, we perceive no error with the court's decision to designate Clark an SVP.

IV.   Disposition

¶ 35    We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.

16