2015 CO 16

**Joe Anthony MARTINEZ, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC803**

Supreme Court of Colorado.

March 16, 2015

---

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Shann Renee Jeffery, Deputy Public Defender, Denver, CO

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, Elizabeth Fraser Rohrbough, Senior Assistant Attorney General, Denver, CO

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1 In this appeal, we review the court of appeals' opinion upholding the petitioner's conviction for first-degree murder after deliberation under a complicity theory. When the trial court defined the element of "after deliberation" for the jury, it used language that this court has held to be constitutionally deficient. At trial, defense counsel objected to the language on the grounds that it was cumulative and unnecessary but erroneously acknowledged that it correctly stated the law. The trial court overruled the objection, and the jury later found the defendant guilty as charged. On appeal the defendant raised for the first time the argument that this court previously disapproved of the definition of "after deliberation" used in the jury instructions, and that the erroneous deliberation instruction was so prejudicial as to require reversal under the plain error standard. He also renewed his claim, first raised in a motion for a judgment of acquittal, that there was insufficient evidence to convict him of first-degree murder after deliberation. The court of appeals reviewed the instruction for plain error and ultimately upheld the defendant's conviction. We now affirm.

¶2 We hold that the plain error standard applies because defense counsel's trial objection failed to ·identify the ground that rendered the instruction erroneous. We conclude that the instructional error did not amount to plain error because overwhelming evidence proved that the defendant deliberated, and the jury instructions as a whole adequately explained the law. Additionally, we hold that there was sufficient evidence to convict the defendant of first-degree murder after deliberation. We therefore affirm the judgment of the court of appeals and remand the case to that court with instructions to return the case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Proceedings Below

¶3 During the early morning hours of June 29, 2005, the victim, Daniel Medina,

called his ex-wife, Christine Sayesva, eighteen times. Then, around 3 a.m., he woke the ex-couple's son and told him that they had to "go take care of something." The victim was angry and wanted to bring guns, but his son convinced him to leave the firearms at home and "handle it like men." The victim drove his son to Sayesva's house, got out of the car, and sent his son inside to find Sayesva. At the time, the defendant, Joe Martinez, lived with Sayesva, his girlfriend. When the victim and his son arrived, Sayesva was in the kitchen. Sayesva, the defendant, and Gabriel Tapia (the co-defendant),[1] had recently returned to Sayesva's house after a late night out. As the victim's son approached the house, he noticed that the porch light was off, but the door was open, and the family's dogs were nowhere to be seen. He testified that this was "pretty odd." He saw neither the defendant nor the co-defendant, but spoke briefly with his mother in the kitchen. She seemed upset. Within minutes, he heard gunfire and rushed his little sister and her friend, who were asleep on the couch, to an upstairs bedroom. When he went back downstairs, the victim was dead in the street, and the defendant and co-defendant had left in Sayesva's car.

¶ 4 Physical evidence showed that the victim confronted the defendant and co-defendant on Sayesva's porch. No witnesses saw what happened on the porch, but several heard a loud argument followed by gunshots. One neighbor heard a male voice shout, "Get out of my house," followed by a series of "popping noises." The victim was shot five times and dragged, alive but incapacitated, into the street in front of Sayesva's house. One bullet had broken his right femur, another had disabled his right arm, and three more had pierced his chest and abdomen. A bullet impact on the porch suggests that a sixth round was fired, though investigators later recovered only five intact fired bullets

and several metal fragments. The evidence conflicts as to whether one or both men dragged the victim away from the house, but several neighbors saw both the defendant and co-defendant standing over the victim as he lay in the street. The defendant stood by the victim's head and the co-defendant by his feet while both men continued to shout at the victim. One neighbor heard the defendant say, "See what happens when you mess with my house." The co-defendant then shot the victim in the face with Sayesva's six-shot revolver, killing him.

¶ 5 A neighbor saw the defendant "grab [the co-defendant] to lead him away," and the two fled in Sayesva's car. The defendant drove, and the co-defendant sat in the front passenger's seat. Alerted by witnesses, the police soon stopped the car and arrested both men. Officers found Sayesva's revolver under the car on the passenger's side; it appeared that the co-defendant had tried to abandon it as he got out of the car when he was arrested. Officers also found unspent cartridges in the car and in the defendant's pockets. All were the same caliber and brand as the rounds fired at the murder scene. At trial, a firearms expert testified that Sayesva's revolver fired the bullet that killed the victim.[2]

¶ 6 The People charged the defendant with first-degree murder after deliberation under a complicity theory. At trial, the prosecution's theory of the case was that the defendant knew about the calls to his girlfriend and had planned the murder. The prosecution argued that the defendant left the front door open, the porch light off, and the dogs penned behind the house. The defendant and co-defendant lay in wait with Sayesva's revolver, and when the victim arrived, one of them shot him five times before he could enter the house. There was evidence that

1. Tapia was found guilty of first-degree murder after a separate trial.

2. Investigators ultimately recovered five fired bullets (one from Sayesva's porch and four from the victim), one casing from a fired bullet, and several lead and copper fragments. The expert conclusively matched the three fired bullets with metal jackets (including the bullet that killed the victim) to Sayesva's revolver. He determined

that markings on the remaining two bullets were consistent with the make and model of the revolver. These two bullets (and some of the live rounds that the police found when they arrested the defendant) had polymer jackets that melt when the bullets are fired and thus do not retain the same identifying tool marks as do metal-jacketed bullets.

the defendant then helped the co-defendant drag the 180–pound victim from the porch to the street. In addition, the bullets found in the defendant's pocket and the evidence that six shots were fired on the porch indicate that the defendant at least assisted in reloading the six-shot revolver before the co-defendant delivered the seventh and fatal shot. The prosecution dismissed the idea that the defendant was an innocent bystander and emphasized the triangle of relationships among the defendant, the victim, and Sayesva. The prosecution argued that the defendant, aware of the many phone calls to his girlfriend, wanted retribution because the victim "mess[ed] with [his] house." The co-defendant, by contrast, was present only because of his friendship with the defendant.

¶ 7 At the close of evidence, the trial court and counsel proposed instructions for the jury. Among the written instructions that the jury ultimately received was an incorrect definition of "after deliberation." Specifically, Instruction 12 told the jury that "[t]he only time requirement for deliberation and premeditation is an interval sufficient for one thought to follow another. The length of time required for deliberation need not be long." This court had previously held in *Key v. People* that this instruction is constitutionally deficient because it distorts the legislature's definition of "after deliberation," which requires an appreciable period of judgment and reflection. 715 P.2d 319, 322–23 (Colo. 1986). When the court discussed the jury instructions with counsel, defense counsel erroneously conceded that the "sufficient for one thought to follow another" language correctly stated the law. She acknowledged that "[c]learly the law is now and has been recently that deliberation requires enough time for one thought to follow another." She argued that Instruction 12 was superfluous and unnecessary, however, given that Instruction 11 also defined "after deliberation."[3] Defense counsel repeated this specific objection three times but was overruled each time because she continued to acknowl-

edge that the pre-*Key* cases cited by the prosecution were still good law. The court then submitted the case to the jurors. They found the defendant guilty of first-degree murder after deliberation.

¶ 8 After the defendant's conviction, the defense filed a motion for a judgment of acquittal or a new trial, which renewed the argument that Instruction 12 was "unnecessary and prejudicial." Once again, the motion failed to mention *Key* or alert the court that the instruction was legally incorrect. The trial court discovered the mistake on its own. It denied the defense's motion anyway, finding that the erroneous instruction was harmless beyond a reasonable doubt. The trial court reasoned that the jury had received the proper definition of "after deliberation" in Instruction 11, and moreover, there was overwhelming evidence that the defendant had deliberated. Accordingly, the court ruled that the error did not merit a new trial. The court also found that there was sufficient evidence to convict the defendant and refused to grant the defense's request for a judgment of acquittal.

¶ 9 The defendant appealed. The court of appeals noted that the defense relied on a different argument against Instruction 12 on appeal than defense counsel had asserted at trial. *People v. Martinez*, No. 09CA572, slip op. at 15–16, 2012 WL 3854617 (Colo.App. Sept. 6, 2012). In its brief to the court of appeals, the defense abandoned the argument that the instruction was superfluous and instead contended that it conflicted with *Key*. Because the defense did not preserve the argument that Instruction 12 was legally incorrect, the court of appeals reviewed the jury instructions for plain error. *Id.* at 16. According to the court of appeals, the instructions, when read as a whole, required the jury to find beyond a reasonable doubt that the defendant acted "after deliberation" as that term is defined by statute. *Id.* at 17. Moreover, the court of appeals determined that there was abundant evidence of deliber-

---

3. Instruction 11 mirrored the statutory definition of "after deliberation." *See* § 18–3–101(3), C.R.S. (2014). It informed the jury that " 'after deliberation' means not only intentionally but also that the decision to commit the act has been

made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner."

ation before the fatal shot. *Id.* at 18. Under the court of appeals' view of the evidence, the temporal interval between the first series of shots and the fatal shot proved conclusively that the defendant deliberated before he and the co-defendant killed the victim. *Id.* at 18–19. Consequently, an erroneous definition of "after deliberation" could not have contributed to the guilty verdict. *Id.* at 19. The court of appeals therefore concluded that the trial court did not commit plain error. *Id.* The court of appeals then held that there was sufficient evidence for a jury to conclude that the defendant was guilty beyond a reasonable doubt and affirmed the defendant's conviction. *Id.* at 22–23.

¶ 10 We granted the defendant's petition for certiorari to review the court of appeals' decision.[4] Neither party disputes that the trial court erred, so our analysis begins with the doctrine of preservation of error. We conclude that the defense's trial objections did not preserve the claim that the deliberation instruction was legally incorrect. As a result, we apply the plain error standard and determine that the instructional error did not so undermine the reliability of the defendant's conviction as to require reversal. Finally, having weighed the evidence against the defendant in order to evaluate the instructional error, we determine that the evidence was sufficient for a reasonable jury to find the defendant guilty of first-degree murder beyond a reasonable doubt under a complicity theory. Accordingly, we affirm the decision of the court of appeals upholding his conviction.

## II. Instructional Error

■ ¶ 11 The trial court in this case erroneously instructed the jury that "after deliberation" means an interval of time "sufficient for one thought to follow another." The prosecution culled this language from an 1895 case, *Van Houten v. People*, that considered how quickly premeditation can occur in the first-degree murder context. 22 Colo. 53, 43 P. 137, 142 (1895). More recently, however-

er, this court has rejected the *Van Houten* language as inconsistent with the element of deliberation that the current first-degree murder statute requires. *People. v. Sneed*, 183 Colo. 96, 514 P.2d 776, 778 (1973). In fact, it is an error of constitutional dimension to give the "sufficient for one thought to follow another" instruction in a first-degree murder trial. *Key*, 715 P.2d at 323.

■ ¶ 12 Constitutional errors are subject to either plain error or constitutional harmless error review on appeal. *People v. Miller*, 113 P.3d 743, 749 (Colo.2005). "[C]onstitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection." *Id.* at 749. By contrast, if the defendant failed to alert the trial court to the asserted error, then the appellate court applies the plain error standard and reverses only if the error was both obvious and substantial. *Id.* at 750; Crim. P. 52(b). To warrant reversal, an unpreserved constitutional error must have "so undermined the fundamental fairness of the [trial] as to cast serious doubt on the reliability of the judgment." *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003).

### A. Preservation of Error

■ ¶ 13 A defendant thus may forfeit his right to fix a constitutional error by failing to make an adequate objection. *Miller*, 113 P.3d at 748–49 (Colo.2005) (citing *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (discussing Fed. R.Civ.P. 52(b))). By limiting appellate review of unpreserved errors to "[p]lain errors or defects affecting substantial rights," Rule 52(b) encourages contemporaneous objections and simultaneously allows appellate courts to correct certain mistakes. Crim. P. 52(b); *Hagos v. People*, 2012 CO 63 ¶ 23, 288 P.3d 116, 121–22. Adequate, contemporaneous objections ensure fair trials because they " 'afford[ ] the judge an opportunity to focus

---

4. Specifically, we granted certiorari to answer the following two questions:

    1. Whether the trial court committed reversible, constitutional error by giving the jury a legally erroneous instruction on the time interval for deliberation, thereby lessening the prosecution's burden of proving deliberation necessary for first-degree murder.

    2. Whether the evidence was insufficient to support the first-degree murder conviction.

on the issue and hopefully avoid the error.'" *Am. Family Mut. Ins. Co. v. DeWitt,* 218 P.3d 318, 325 (Colo.2009) (quoting *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir.1997)). The requirement of adequate, contemporaneous objections also motivates litigants to strive for "'a fair and accurate trial the first time around.'" *Hagos,* ¶ 23, 288 P.3d at 121 (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

¶ 14 A general objection will not suffice. *People v. Brionez,* 39 Colo.App. 396, 570 P.2d 1296, 1298 (1977). Parties must make objections that are specific enough to draw the trial court's attention to the asserted error. *People v. Melendez,* 102 P.3d 315, 322 (Colo.2004). Although we do not require "'talismanic language' to preserve particular arguments for appeal," a party must present the trial court with "an adequate opportunity to make findings of fact and conclusions of law" on the issue. *Id.*; *see also People v. Herdman,* 2012 COA 89, ¶ 15, 310 P.3d 170, 175. An adequate objection allows the trial court a meaningful chance to prevent or correct the error and creates a record for appellate review. *See Melendez,* 102 P.3d at 322; *People v. Rodriguez,* 209 P.3d 1151, 1156 (Colo.App.2008). By contrast, when a party raises a new argument on appeal, the reviewing court will apply the plain error standard. *Miller,* 113 P.3d at 745. Plain error review is equally applicable when a party alters the grounds for his objection on appeal. *See, e.g., People v. Syrie,* 101 P.3d 219, 223 (Colo. 2004); *People v. Salazar,* 964 P.2d 502, 507 (Colo.1998).

¶ 15 Accordingly, we first consider whether the defense in this case preserved an objection to the legal propriety of Instruction 12. We note that the defense objected to Instruction 12 on the basis that it was repetitive and unnecessary. But no language or arguments in the objection alerted the trial court that Instruction 12 was based on an outdated legal standard. The defense thus provided the trial court with no meaningful chance to avoid the instructional error.

As a result, we review the erroneous instruction for plain error.

### B. Application of the Plain Error Standard

¶ 16 Although neither party brought the relevant caselaw to the trial court's attention, this court made clear in 1986 that the *Van Houten* language should not be used in jury instructions. *See Key,* 715 P.2d at 322–23. Accordingly, the crux of the plain error inquiry in this case is whether the instructional error was substantial, in other words, whether it cast serious doubt on the jury's verdict. If the record contains overwhelming evidence of deliberation, then an instruction that, although erroneous, did not materially distort the meaning of "after deliberation" does not rise to the level of plain error. *Cf. Miller,* 113 P.3d at 750. As a result, this analysis has two aspects. First, we weigh the evidence against the defendant. Second, we consider whether the jury instructions as a whole adequately informed the jury of the law. This court's decision in *Key,* which assessed the same instructional error that occurred in this case, instructs both aspects of our analysis.[5]

¶ 17 In *Key,* overwhelming evidence that the defendant deliberated led this court to conclude that the instructional error was harmless beyond a reasonable doubt. 715 P.2d at 323. In that case, the defendant shot the victim twice, reloaded his pistol, shot the victim twice more, struck him, and ran him over. *Id.* at 324. The defendant then drove away in the victim's truck. *Id.* This court explained that because sufficient time had elapsed between each act of violence, the defendant must have killed the victim after deliberation and not "in a hasty or impulsive manner." *Id.* We therefore affirmed the defendant's conviction for first-degree murder. *Id.*

¶ 18 There is similarly convincing evidence of deliberation in the instant case, where the victim was shot five times, dragged into the street, and shot once more. During the affray, a witness heard the defendant shout,

5. In *Key,* this court applied the constitutional harmless error standard to the erroneous *Van Houten* instruction given at trial because the defendant lodged an adequate, contemporaneous objection. *See Key,* 715 P.2d at 321, 324.

"See what happens when you mess with my house," at the victim, and several witnesses heard both men taunt the wounded victim. These exclamations evince that both the defendant and co-defendant formed the intent to kill the victim an appreciable length of time before they committed the fatal act. As in *Key*, where the defendant paused mid-attack to reload his pistol, *id.* at 324, here, the prosecution presented evidence from which the jury could infer that the defendant assisted in reloading the revolver between the first series of shots and the final, fatal shot. There was also evidence that the defendant helped the co-defendant drag the victim from the porch where the original confrontation occurred into the street where the victim died. This sequence of events resembles the attack in *Key*, which similarly comprised a series of distinct acts of violence, *id.* And like the defendant in *Key*, the defendant in this case had sufficient time to deliberate between the shooting on the porch and the killing in the street.

¶ 19 In *Key*, the trial court also gave the jury the correct, statutory definition of "after deliberation" before it gave the erroneous *Van Houten* instruction. *Id.* at 321. We concluded that "[t]he erroneous language ... did not so distort the definition of 'after deliberation' ... that the prosecution was relieved of its burden of proving the mental culpability requirement of first-degree murder beyond a reasonable doubt." *Id.* at 323. Similarly, the trial court in this case provided the statutory definition of "after deliberation" immediately before it gave the erroneous instruction. *See* § 18–3–101(3), C.R.S. (2014). Instruction 11 told the jury that " 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." In so doing, this instruction tempered the risk that Instruction 12 might lessen the prosecution's burden of proof with respect to the element of deliberation. Instruction 12 informed the jury that "[t]he only time period requirement for deliberation and premeditation is an interval sufficient for one thought to follow another. The length of time required for deliberation need not be long." While Instruction 12 may have misled the jury had it been given in isolation, its proximity to Instruction 11 clarified for the jury that an appreciable length of time must have elapsed between the formation of the intent to kill and the fatal shot. The erroneous Instruction 12 thus did not directly contradict the statutory definition of "after deliberation" given in Instruction 11, and the instructions, when read together, did not materially distort the definition of deliberation.

¶ 20 Hence, because the record in this case reveals overwhelming evidence of deliberation, and the instructions as a whole adequately informed the jury of the law, the instructional error did not seriously impair the reliability of the jury's guilty verdict. We therefore affirm the court of appeals' holding that there was no plain error in the trial court's jury instructions.

### III. Sufficiency of the Evidence

¶ 21 We now address whether there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant was guilty of first-degree murder after deliberation under a complicity theory.

¶ 22 When presented with a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the prosecution has met its burden of proof with respect to each element of the crime charged. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). We ask "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty ... beyond a reasonable doubt." *People v. Bennett*, 183 Colo. 125, 515 P.2d 466, 469 (1973).

¶ 23 In the instant case, the jury found the defendant guilty of first-degree murder after deliberation as a complicitor. Complicity liability allows the defendant to be held accountable for the victim's murder, even though the co-defendant fired the fatal shot, if the prosecution proved that (1) the defendant had the culpable mental state required for first-degree murder after deliberation, and (2) he assisted or encouraged the co-defendant with the intent that his conduct

promote or facilitate the murder. §§ 18–3–102(1)(a), 18–1–603, C.R.S. (2014).

¶ 24 The defendant argues that the only evidence of his involvement in the victim's murder was his presence at the scene, which is insufficient to sustain his conviction. He points out that there were no eyewitnesses to the confrontation on Sayesva's porch, and everyone agrees that the co-defendant fired the shot that killed the victim. The defendant asserts that only indirect, circumstantial evidence indicates that he had the culpable mental state required for first-degree murder after deliberation. He therefore likens this case to *People v. Duran*, where the court of appeals stated that merely "being present [at the scene] and being associated with [the shooter] are insufficient to support a determination of complicity." 272 P.3d 1084, 1092 (Colo.App.2011).

¶ 25 The defendant's case is distinguishable from *Duran*. As discussed above, there was considerable evidence that the defendant in this case had the culpable mental state required for first-degree murder after deliberation, and that he acted to facilitate the murder. Unlike *Duran*, where "[t]here was no evidence of defendant's actions or any statement he made during the confrontation," *id.* at 1092, evidence in this case indicated that the defendant participated in loading and reloading the gun used to kill the victim, dragged the crippled victim into the street, and taunted the victim before the co-defendant fired the fatal shot. In addition, the gun and the getaway car were on loan to the defendant from his girlfriend. These circumstances give rise to the "reasonable inference that the defendant had adequate time for the exercise of reflection and judgment concerning the fatal act." *People v. Dist. Court*, 926 P.2d 567, 571 (Colo.1996) (explaining that prosecutors generally do not have access to direct evidence of a defendant's mental state and must present the jury with indirect evidence of deliberation). From this evidence, a reasonable mind could conclude beyond a reasonable doubt that (1) the defendant had the culpable mental state required for first-degree murder, and (2) he assisted the co-defendant with the intent to facilitate the murder.

¶ 26 Accordingly, we affirm the judgment of the court of appeals that the evidence was sufficient to permit a reasonable juror to find beyond a reasonable doubt that the defendant was guilty as a complicitor of murdering the victim.

## IV. Conclusion

¶ 27 We hold that the plain error standard applies because defense counsel's trial objection failed to identify the ground that rendered the instruction erroneous. We conclude that the instructional error did not amount to plain error because overwhelming evidence proved that the defendant deliberated, and the jury instructions as a whole adequately explained the law. Additionally, we hold that there was sufficient evidence to convict the defendant of first-degree murder after deliberation. We therefore affirm the judgment of the court of appeals and remand the case to that court with instructions to return the case to the trial court for further proceedings consistent with this opinion.