24CA1916 Peo in Interest of ZS 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1916
Fremont County District Court No. 22JV30093
Honorable Kaitlin B. Turner, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.S., a Child,

and Concerning Z.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Eric Bellas, County Attorney, Sean R. Biddle, Assistant County Attorney, Canon City, Colorado, for Appellee

Jennifer A. Zamarripa, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    Z.A. (mother) appeals the judgment terminating her parent-child legal relationship with Z.S. (the child).  We affirm.

## I.    Background

¶ 2    In August 2022, the Fremont County Department of Human Services filed a petition in dependency or neglect, alleging that the child's psychological kinship provider — who had court-ordered custody — had physically abused her.[1]  As pertinent to this appeal, mother made a no-fault admission to the petition, and a magistrate adjudicated the child dependent or neglected.  The magistrate then adopted a treatment plan for mother.

¶ 3    In January 2024, the Department moved to terminate mother's parental rights.  The parties waived the right to a hearing before a judge, so the magistrate conducted a termination hearing in June 2024.  Following the hearing, the magistrate granted the Department's motion and terminated mother's parental rights.

---

[1] We take judicial notice of the petition and other relevant filings in Fremont County Case No. 22JV30049.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (noting that appellate courts may take judicial notice of court records in related proceedings under CRE 201(f)).

¶ 4     Mother then filed a petition for juvenile court review of the magistrate's ruling, asserting that (1) the Department had failed to make reasonable efforts to investigate kinship placements and provide family time and (2) the magistrate had erred by finding that there was no less drastic alternative to termination.  The juvenile court rejected mother's arguments because the record supported the magistrate's findings.  Consequently, the court adopted the magistrate's order.

## II.    Discussion

¶ 5     Mother asserts that the magistrate erred by finding that (1) the Department made reasonable efforts and (2) there was no less drastic alternative to termination.  We disagree.

### A.    Standard of Review

¶ 6     The juvenile court may delegate to a magistrate its authority to preside over a termination proceeding.  § 19-1-108(1), C.R.S. 2024; *see also People in Interest of L.B-H-P.*, 2021 COA 5, ¶ 9.  In a case heard by a magistrate, the parties are bound by the magistrate's findings and recommendations, subject to a request for juvenile court review.  *L.B-H-P.*, ¶ 9; *see also* § 19-1-108(3)(a.5).  A juvenile court reviewing a magistrate's decision must adopt, reject, or modify

2

the magistrate's initial order or judgment. C.R.M. 7(a)(10). But the court may not alter the magistrate's findings unless they are clearly erroneous. C.R.M. 7(a)(9).

¶ 7　　Our review of the juvenile court's decision is effectively a second layer of appellate review, and, like the juvenile court, we must accept the magistrate's factual findings unless they are clearly erroneous. *People in Interest of N.G.*, 2012 COA 131, ¶ 37. However, we may set aside a judgment based on errors of law or findings that do not conform to the statutory criteria. *Id.*

### B.　　Reasonable Efforts

¶ 8　　Mother first argues that the Department failed to provide her with reasonable accommodations as required by the Americans with Disabilities Act of 1990 (ADA), and the magistrate therefore erred by finding that the Department had satisfied its reasonable efforts obligation. *See People in Interest of S.K.*, 2019 COA 36, ¶ 34. Because mother did not preserve the ADA issue, we do not reach the merits of her contention. *See People v. Tallent*, 2021 CO 68, ¶ 11 ("[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved . . . , regardless of the positions taken by the parties.").

¶ 9 Because a petition for juvenile court review of a magistrate's judgment is a prerequisite to an appeal under section 19-1-108(5.5), a party must raise an issue in the juvenile court so that the court has an opportunity to correct any error that the magistrate may have made. *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006). In other words, a party must present an issue to the juvenile court in a petition for review before we may consider it on appeal. *Id.*; *see also People in Interest of M.B.*, 2020 COA 13, ¶ 14 (noting that appellate courts do not consider issues that were not raised or ruled on in the juvenile court).

¶ 10 Although mother challenged the Department's reasonable efforts in her petition, she did not specifically assert that the Department failed to provide her with reasonable accommodations under the ADA. *See Martinez v. People*, 2015 CO 16, ¶ 14 ("Parties must make objections that are specific enough to draw the trial court's attention to the asserted error."). Therefore, the juvenile court did not rule on the ADA issue, and we will not address it for the first time on appeal. *See M.B.*, ¶ 14; *K.L-P.*, 148 P.3d at 403; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21 (declining to address an unpreserved ADA claim when the court "didn't make

4

any specific findings about the applicability of the ADA for [the appellate court] to review").

### C. Less Drastic Alternative

¶ 11      Mother next contends that the magistrate erred by finding that there was no less drastic alternative to termination. Specifically, she asserts that (1) the Department failed to adequately investigate maternal grandparents and maternal great-aunt (collectively, maternal relatives) and (2) the maternal relatives were willing to accept an allocation of parental responsibilities (APR). We are not persuaded.

### 1. Applicable Law

¶ 12      To terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the magistrate must find, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. Before terminating parental rights, however, the magistrate must also consider and eliminate less drastic alternatives. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 19.

¶ 13    When considering less drastic alternatives, the magistrate must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). To aid the magistrate in determining whether there is a less drastic alternative to termination, the department must evaluate a reasonable number of people the parent identifies as placement options. *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004). An APR to a relative is not a less drastic alternative to termination if the child needs the permanency that only adoption can provide. *See People in Interest of Z.M.*, 2020 COA 3M, ¶ 30.

¶ 14    A viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests. *A.M.*, ¶ 27. Therefore, if the magistrate considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. Under those circumstances, we will affirm the magistrate's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

### 2. Magistrate's Ruling and Juvenile Court's Review

¶ 15 The magistrate determined that mother had not complied with her treatment plan, she was unfit, and she was unlikely to become fit within a reasonable time. The magistrate also determined that the Department had made "efforts to assess potential kinship placement[s]" and that there was "no less drastic alternative that would serve the best interests of the child."

¶ 16 On review, the juvenile court rejected mother's assertion that the Department failed to adequately assess the maternal relatives. The court noted that the Department had considered placement with maternal great-aunt but did not support it because the child suffered significant dysregulation after visits with her. The court also concluded that the Department had investigated maternal grandparents but did not support placing the child with them because, among other reasons, a friend of maternal grandfather had "statutorily raped" mother when she was a teenager.

¶ 17 The juvenile court also rejected mother's contention that an APR to one of the maternal relatives was a less drastic alternative to termination. The court noted that the magistrate had properly "focused on the child's need for permanency" in rejecting less

drastic alternatives by relying on evidence that the child "had been in nine placements in her short life," she needed stability to thrive, and an APR would not provide her with the permanency that she needed.

### 3. Analysis

¶ 18    We conclude the record supports the magistrate's finding that the Department adequately investigated relatives for placement, and we therefore agree with the juvenile court's conclusion. The record shows that the Department completed a diligent search for relatives on more than one occasion, sent out letters to the identified family members multiple times, and investigated the relatives who responded, including the maternal relatives. *See B.H.*, ¶ 82 (rejecting the parent's assertion that the Department failed to properly investigate relatives). The record also confirms the Department's reasons for declining placement with the maternal relatives, as described above. *See People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005) (concluding that a long-term placement with the child's grandmother was not a less drastic alternative to termination because grandmother ran a facility for sex offenders in her home).

¶ 19    What's more, the record shows that mother did not support placing the child with maternal great-aunt for most of the case and mother opposed maternal great-aunt's request for a change of placement (which the court denied). *See People in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007) (ratifying the court's rejection of a potential less drastic alternative, in part, because the parent opposed the placement). Given this record, we are not convinced that the Department had an obligation to continue exploring maternal great-aunt as a placement option.

¶ 20    We also conclude the record supports the magistrate's finding that there was no less drastic alternative to termination. For example, the caseworker testified that

- the child had been in nine placements throughout her life and needed the permanency that only an adoption could provide, *see Z.M.*, ¶ 30;

- because of mother's minimal participation in the case, she did not have any relationship with the child, *see People in Interest of A.R.*, 2012 COA 195M, ¶ 38 (a court may consider the benefits of an ongoing relationship with a parent); and

9

- moving the child to a new placement would be "detrimental" to her well-being, *see A.M.*, ¶¶ 27, 33.

¶ 21    Mother does not identify any legal error made by the magistrate or the juvenile court.  *See N.G.*, ¶ 37.  At most, she asks us to reweigh the evidence and substitute our judgment for that of the magistrate.  We cannot do so.  *See S.Z.S.*, ¶ 29.  Rather, because the record supports the magistrate's findings, we cannot disturb them.  *See N.G.*, ¶ 37; *see also B.H.*, ¶ 81.

### III.    Disposition

¶ 22    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.