22CA2073 Peo v Phan 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2073
Jefferson County District Court No. 21CR1228
Honorable Philip J. McNulty, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dong Ngoc Phan,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Dong Ngoc Phan, appeals his convictions of attempted second degree murder and first degree assault.  We affirm.

## I.     Background

¶ 2     In May 2021, Phan called 911 to report a stabbing at the apartment he shared with his girlfriend, T.H.  Phan said to the 911 operator, "Help me.  I stabbed my girlfriend."  The 911 operator collected Phan's address and heard Phan say, "Please help me.  Someone stabbed my . . . ."  Phan started to say "wife" but went on to say "girlfriend" instead.

¶ 3     When officers arrived on scene, T.H. and Phan were outside the apartment building.  T.H. was unconscious and bleeding, and Phan was holding her.  Phan had blood on the front of his jacket, hands, and pants.  Officers found drops of blood leading from the couple's location outside into their bedroom in their apartment, where blood soaked the carpet.  A crime scene analyst found a knife in a laundry basket in a closet when they searched the apartment.

¶ 4     Police transported Phan to the police station and charged him with attempted first degree murder and first degree assault.  Detective David Noble, the lead detective on the case, interviewed

1

Phan on the day of the incident in an interview room at the police station. T.H. was transported to the hospital and underwent surgery for five stab wounds — one on her stomach, one below her breast, two on her lower back, and one on the back of her neck. Noble interviewed T.H. five days later at the hospital.

¶ 5    At trial, Noble testified that T.H. stated the following during their interview:

- T.H. decided to kill herself after Phan left the apartment. She went to the kitchen, grabbed a knife, and walked back into their bedroom.

- T.H. stabbed herself in the stomach. Phan then entered the apartment, and the two struggled over the knife.

- During the struggle with Phan, T.H. somehow got stabbed in the back of her neck and on her back left side near her kidney. Phan was able to get the knife away and threw it into a laundry basket.

- Phan "did not stab her."

- T.H. thought about committing suicide three or four times before, and she and Phan had made a pact to commit suicide in the weeks before the incident.

¶ 6    Shortly after the hospital interview, T.H. called Noble to amend her prior statement.  Noble testified that [T.H.]

> changed [her statement] slightly to state that she tried to commit suicide to show her love for Mr. Phan.  I clarified with her that she initially told me it was because she was depressed.  And then she said it's — due to Mr. Phan's jealousy, she wanted to prove that she loved only him, along with her depression, on why she [attempted to] commit suicide.

¶ 7    T.H. later met with the prosecution's investigator, Kate Battan, and again changed her story.  T.H. told Battan that she and Phan "were arguing, and that she knocked over a humidifier that was sitting on a table, out of anger and frustration.  And then he started kicking her.  And then he grabbed a knife from underneath the mattress.  And then he started stabbing her."

¶ 8    T.H.'s testimony at trial was generally consistent with what she told Battan.  T.H. testified that Phan was looking for his keys when the two started to argue.  T.H. said she pushed the humidifier because she was upset, Phan kicked her, and she fell to the ground.  Then, Phan lifted the mattress on the bed, pulled out a knife, and stabbed her.  When asked why she gave Noble a different story, T.H. said she was trying to protect Phan.  She also testified that she gave

3

Battan a different version of events "[b]ecause that's the truth. I don't want to lie."

¶ 9 Following the presentation of evidence, the court discussed jury instructions with the prosecutors and defense counsel. Phan requested instructions on the affirmative defenses of intoxication, heat of passion, and self-defense. The trial court denied the request for a heat of passion instruction and a self-defense instruction, but it granted the request for an intoxication instruction.

¶ 10 The jury ultimately found Phan guilty of attempted second degree murder and first degree assault. Phan was sentenced to eighteen years in the custody of the Department of Corrections. Phan appeals his convictions.

## II. Analysis

¶ 11 Phan argues that the trial court erred by (1) failing to correctly instruct the jury on his affirmative defenses; (2) allowing Noble to provide improper lay testimony because his testimony was based on specialized knowledge, training, and his experience as a detective; and (3) permitting Noble to improperly opine as to the truthfulness of T.H.'s statements when he interviewed her. We disagree on all counts.

4

### A. Affirmative Defense Jury Instructions

¶ 12    Phan argues that the trial court erred by denying (1) a self-defense jury instruction and (2) a use of physical force — special relationship instruction. He contends that sufficient evidence supported the instructions. We disagree.

#### 1. The Trial Court Did Not Err by Denying Phan's Request for a Self-Defense Jury Instruction

¶ 13    Phan contends that the trial court erred by refusing to provide a jury instruction on self-defense because the testimony supported an inference that Phan defended himself against T.H. We disagree.

#### a. Additional Applicable Facts

¶ 14    At trial, several law enforcement officers detailed what they saw at the apartment or what Phan said to them shortly after the incident.

- Agent Garret Compton was the first officer on the scene and spoke with Phan. Phan told Compton that he and T.H. were arguing. Phan became suspicious that another man was in the apartment, "so he chose to barricade himself in the bedroom" and "used a piece of furniture to block the door and separate himself from [T.H.]"

5

- Detective Monique Gilstrap, one of the detectives who executed the search warrant, testified that the TV stand in the bedroom was pulled away from the wall, and officers could not completely open the bedroom door because it was as if "somebody was using it to try to block the door, to keep that door closed." Gilstrap also testified that the chain part of the sliding lock on the door was on the floor behind the door and not attached to the wall.

- Crime Scene Analyst Sheri Shimamoto testified that there was what looked like a humidifier that came apart, among other items, scattered on the floor.

¶ 15    T.H. gave the following trial testimony:[1]

- T.H. and Phan were in their apartment all day. They smoked marijuana in the morning and argued about Phan's keys.

- T.H. was upset and pushed the humidifier to the ground.

---

[1] T.H.'s first language is Vietnamese. T.H. provided testimony at trial through a certified court interpreter. There were a few instances in which T.H. did not seem to understand a question or asked the prosecutor or defense counsel to clarify a question.

- Phan barricaded himself in the bedroom. T.H. did not break down the door, break the lock off the door, or push back the TV stand when trying to enter their bedroom.

- T.H. did not attack, push, or hit Phan.

- When asked by the prosecution, T.H. admitted to using marijuana earlier and "being irrational."

- T.H. testified that at some point she went into the kitchen and grabbed a knife.

### b. Jury Instruction Conference

¶ 16 At the jury instruction conference, defense counsel asked the court to provide a self-defense instruction, arguing that there was sufficient evidence that T.H. took the knife into the bedroom, there was a conflict, and there was "some evidence of self-infliction of wounds." The court asked defense counsel what evidence would support a self-defense instruction and against whom. Defense counsel responded as follows:

> Himself (meaning Phan) . . . . If someone brings in a knife and, you know, there's an argument, well, people might believe that they're being attacked. You brought a knife into the fight.
>
> . . . .

> [T.H.] broke down the door.  She moved the TV stand.  They are arguing.  She brings a knife into the situation.
>
> . . . .
>
> And a person has a right to defend themselves.  Whether it's reasonable is up to the jury.

¶ 17    The court asked defense counsel what evidence there was to support the stabbing, other than T.H.'s statement that she brought a knife into the bedroom, and defense counsel responded,

> I think the evidence, at least from what I elicited, was that [T.H.] got the knife from the kitchen and brought it into the bedroom.  That's a threat. . . .  [I]f you bring a knife into a fight, another person is probably going to defend themselves.  They might take the knife from you and stab you back.  That's not that unusual.  Now, whether it's reasonable or not, well, that's up to the jury.  That's what happens when people bring knives to fights.  They sometimes lose that knife.  And in the process of the other person defending themselves, they get stabbed back with the use of their own knife.  Happens all the time.

¶ 18    The court then asked the prosecution for its position.  In response, the prosecutor said,

> I think I understand what [defense counsel] is arguing, which is, essentially, that the introduction of the knife creates a situation in which Mr. Phan needs to defend himself.  But I don't think that you can argue that, while also

8

arguing some of the wounds may have been self-inflicted, or even accidental.

. . . [E]ven if we were to take the story that [T.H.] gave to Detective Noble, which is that she had stabbed herself in the abdomen, and then he disarmed her and a struggle ensued — If that were to be true, the remainder of those wounds . . . would have been accidental.

. . . And it wouldn't be a situation in which Mr. Phan would be needing to defend himself, because . . . the struggle isn't a struggle that produces the need for defense. The struggle is a struggle that would produce a loose knife, essentially, that led to the rest of those wounds, potentially.

Based on what [T.H.] said, she was very clear . . . and the story that Detective Noble repeated that he was given, was that [Phan] interrupted her while she was stabbing herself in the stomach, and that he disarmed her. [T.H.] was very clear, both on direct and cross, that she never broke down the door, and that she never moved the furniture, and that she never attacked or hit Mr. Phan.

. . . .

So I'm not seeing any shred of evidence that Mr. Phan was ever in a situation in which he had to defend himself from the knife.

Worst case scenario, as far as this prosecution goes, would be that the struggle did ensue, and that Mr. Phan was attempting to disarm her, and those wounds were received accidentally. That is not self-defense.

9

> That is something he should be acquitted for entirely; not a situation in which he would necessarily have to admit that he inflicted the wounds because he had to defend himself.

¶ 19    The court agreed with the prosecution and denied defense counsel's request for a self-defense instruction. The court found that while "there was evidence that [T.H.] brought a knife into the bedroom" and threatened to kill herself, "there was absolutely no evidence that she threatened [or] attempted to threaten Mr. Phan with the knife."

### c.    Standard of Review and Applicable Law

¶ 20    We review de novo whether a trial court properly instructed the jury. *People v. Tardif*, 2017 COA 136, ¶ 34. Whether a defendant has met their burden to support an affirmative defense is a question of law, and we review the sufficiency of the evidence de novo. *People v. Jones*, 2023 COA 104, ¶ 18.

¶ 21    Self-defense is a person's justified use of a degree of physical force reasonably believed necessary to defend themselves from what they "reasonably believe[] to be the use or imminent use of unlawful physical force by" another person. § 18-1-704(1), C.R.S. 2025. A defendant is entitled to an affirmative defense instruction

10

embodying the theory of his case when there is any credible evidence in the record to support the defendant's theory. *People v. Newell*, 2017 COA 27, ¶ 22; § 18-1-407(1), C.R.S. 2025.

¶ 22 The requirement of "some credible evidence" means "'some evidence,' 'any credible [even if highly improbable] evidence,' 'a scintilla of evidence,' a 'small quantum of evidence,' and 'any evidence.'" *Galvan v. People*, 2020 CO 82, ¶ 24 (citations omitted). This threshold is "exceedingly low," and precluding an affirmative defense instruction is only appropriate when there is no evidence in the record to support the affirmative defense. *People v. Gallegos*, 2023 COA 47, ¶47 (quoting *People v. Snider*, 2021 COA 19, ¶ 15), *aff'd*, 2025 CO 41M. The defendant does not need to be the source of the evidence supporting an affirmative defense, and the evidence may come from the prosecution. *Newell*, ¶ 21. We view the evidence in the light most favorable to the defendant when determining whether a defendant is entitled to an affirmative defense instruction. *Gallegos*, ¶ 48.

### d. Analysis

¶ 23 Phan argues that the following evidence meets the scintilla of evidence standard: (1) Phan barricaded himself in the bedroom,

blocked the door with a TV stand, and locked a chain on the door; (2) T.H. smoked marijuana that morning and was acting irrationally; (3) the couple had been fighting that morning because Phan found a letter in which T.H. called him a bad person; and (4) Noble testified that T.H. indicated that she brought the knife into their bedroom.

¶ 24    While Phan argues that he barricaded the door, the evidence does not indicate that he did so because T.H. threatened him or because he was afraid of T.H.  Rather, Compton testified that Phan barricaded the door because Phan said he thought another man was in the apartment.  Moreover, defense counsel contended that Phan barricaded himself in the bedroom to be "left alone."  None of this evidence indicates that Phan barricaded himself because he felt threatened by T.H. or feared that she would use imminent physical force against him, which is necessary to support a self-defense instruction.

¶ 25    T.H. and Battan both testified that T.H. and Phan were arguing on the morning of the incident, had smoked marijuana, and were acting irrationally.  Defense counsel did not elicit evidence that T.H.'s use of marijuana or her irrational behavior caused Phan to

12

fear T.H. or think that she would use physical force against him. Several witnesses testified that the couple had an argument, but there's no evidence indicating that Phan felt threatened by or feared T.H.

¶ 26 Noble testified that, during her interview, T.H. admitted that she had brought the knife into the bedroom, and T.H. testified that, at some point, she had the knife. But T.H.'s and Noble's testimony indicated that T.H.'s intent was to harm herself, not Phan. No evidence contradicted T.H.'s intention to hurt herself with the knife.

¶ 27 Further, the 911 call and Phan's statements to responding officers do not support the notion that Phan felt threatened. In the 911 call, Phan stated, "Help me. I stabbed my girlfriend." Later on the call, Phan said, "Someone stabbed my," and started to say wife but said girlfriend instead. Compton further testified that Phan said he thought there was another man in the apartment and that this other man was the one who stabbed T.H. In none of these conversations shortly after the incident did Phan indicate that he had to defend himself or that he was acting out of fear of T.H.

¶ 28 While there was evidence that the furniture was moved, that the couple smoked marijuana and argued, and that T.H. brought

13

the knife into their bedroom, there was no evidence that Phan reasonably believed T.H. would imminently use unlawful physical force against him. Because the self-defense statute requires as much, *see* § 18-1-704(1), the trial court did not abuse its discretion when it concluded that the evidence did not support a self-defense jury instruction.

### 2. The Trial Court Did Not Err by Failing to Give a Use of Physical Force — Special Relationship Jury Instruction

¶ 29 The use of physical force is justifiable when a person reasonably believes that another person is "about to commit suicide or to inflict serious bodily injury upon himself" and uses reasonable and appropriate force to thwart the result. § 18-1-703(1)(d), C.R.S. 2025. Phan contends that the trial court erred by not providing a jury instruction on this affirmative defense because there was evidence that Phan used physical force to thwart T.H.'s suicide attempt.

### a. Preservation and Standard of Review

¶ 30 We review a preserved objection to an affirmative defense jury instruction for constitutional harmless error, *Gallegos*, ¶ 17, and

unpreserved errors for plain error, *Liggett v. People*, 135 P.3d 725, 733 (Colo. 2006).

¶ 31 To preserve a matter for appeal the "defendant must alert the trial court to the particular issue," *People v. Cordova*, 293 P.3d 114, 120 (Colo. App. 2011), and provide the trial court with a "meaningful chance to prevent or correct the error and create[] a record for appellate review," *Martinez v. People*, 2015 CO 16, ¶ 14. An objection before the trial court must be specific enough to draw attention to the asserted error. *Id.* "[T]alismanic language" is not required for preservation, *id.* (citation omitted), and raising the substance of the argument sufficiently preserves the argument for appeal, *People v. Cooley*, 2020 COA 101, ¶ 24. An argument that goes to the subject matter of a statute, without citing the statute directly, sufficiently preserves the matter for appeal. *See People v. Komar*, 2015 COA 171M, ¶ 55.

¶ 32 Defense counsel's notice and motion to endorse defenses included the affirmative defenses of self-defense, intoxication, and heat of passion. When discussing the requested self-defense instruction, defense counsel argued that T.H. could have inflicted some of the wounds on herself and repeatedly noted that T.H. was

suicidal. But defense counsel did not argue that Phan stabbed T.H. to stop her from inflicting the wounds on herself. Rather, Phan's argument was that Phan was defending *himself*. Defense counsel argued that T.H. was provoking Phan to stab her and that he was disarming her to protect himself, not to protect her. Phan did not ask for an instruction under section 18-1-703(1)(d) or substantively argue that he was protecting T.H. from harming herself. Because this claim was unpreserved, we review whether the trial court plainly erred by failing to provide a jury instruction under section 18-1-703(1)(d).

¶ 33    An error is plain when it is "obvious and substantial." *People v. Douglas*, 2015 COA 155, ¶ 41. An obvious error is one that contravenes either a clear statutory command, well-settled legal principle, or Colorado case law and is so obvious that a trial judge should be able to avoid the error without an objection. *People v. Pollard*, 2013 COA 31M, ¶¶ 39–40. A substantial error is one that "so undermine[s] the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *People v. Cook*, 197 P.3d 269, 275 (Colo. App. 2008) (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

16

### b. Analysis

¶ 34    The court was not required to sua sponte offer a jury instruction on the use of physical force — special relationship theory when Phan only raised self-defense. Even if the court should have instructed the jury on the use of physical force — special relationship defense, however, any error was not plain because it was not obvious. The court did not contravene a clear statute, legal principle, or case law by failing to give a use of physical force — special relationship instruction. Nor was the instruction something the trial court should have given of its own accord because counsel never indicated that, in addition to self-defense, he was pursuing another theory.

¶ 35    Defense counsel only asked the court for a self-defense instruction, under the theory that Phan was afraid for and defending *himself* against T.H. Defense counsel did not request a use of physical force — special relationship instruction or argue that Phan stabbed T.H. because he was afraid *for T.H.* and was trying to prevent her from committing suicide. Further, defense counsel never presented evidence that Phan accidentally inflicted any of T.H.'s stab wounds by trying to disarm her or to stop her

17

suicide attempt; rather, counsel argued that T.H.'s wounds were attributable to Phan defending himself.

¶ 36 Accordingly, the court did not plainly err by failing to instruct the jury on the use of physical force — special relationship.

### B. The Trial Court Did Not Reversibly Err by Allowing Noble's Opinion Testimony

¶ 37 Phan contends that trial court erred by allowing a lay witness to provide an expert opinion. We disagree.

### 1. Additional Applicable Facts

¶ 38 At trial, Noble testified that he had six months of academy training and four months of field training, as well as a domestic violence and sexual assault classes. During his testimony, he mentioned that he interviewed T.H., took pictures of her injuries, and took her statement about what occurred on the day of the incident. Noble testified that according to T.H.'s account of events, she had stabbed herself intending to commit suicide.

¶ 39 The prosecutor and Noble then had the following exchange:

> Q: Did the story that [T.H.] was telling you on May 18, 2021, make sense to you?
>
> A: No.
>
> Q: Why not?

> A: I mean, when people are committed and do that act for suicide, it happens any number of ways. But her injuries weren't consistent with other suicides that I've been a part of, or any other trainings I've been a part of in death investigations when we're looking at those kinds of signs.

Defense counsel did not object and asked Noble questions about his interview with T.H. during cross-examination. During closing argument, the prosecution referred to Noble's testimony, stating,

> Detective Noble told you that this isn't consistent with suicide. He's been a detective for quite some time. He goes out to suicides. He investigates suicides. He goes to trainings about suicides. He says he's never seen one like that, and that it didn't make sense to him.

¶ 40    Phan contends that the trial court erred by permitting Noble to opine as a lay witness that T.H.'s injuries were inconsistent with suicide because his opinion was unqualified expert testimony.

### 2.    Standard of Review and Applicable Law

¶ 41    We review the trial court's evidentiary decisions for abuse of discretion. *Venalonzo v. People*, 2017 CO 9, ¶ 15. "Absent an abuse of discretion, we will not disturb a trial court's evidentiary rulings on appeal." *People v. Veren*, 140 P.3d 131, 136 (Colo. App. 2005).

¶ 42    Lay witnesses may testify in the form of opinion testimony when those opinions are not based on scientific, technical, or other specialized knowledge. *Venalonzo*, ¶ 18; CRE 701. A lay opinion is based on "an ordinary person's experiences or knowledge," while an expert opinion is based on the witness's "specialized experiences, knowledge, or training." *Venalonzo*, ¶ 23. An officer-witness's testimony does not become expert testimony simply by reference to their training and experience. *People v. Murphy*, 2021 CO 22, ¶ 31. But if that testimony is based on that specialized training or experience, it is expert testimony, *Venalonzo*, ¶ 23, and the officer must be qualified as an expert, *People v. Stewart*, 55 P.3d 107, 124 (Colo. 2002). The relevant question is "whether an ordinary person could properly offer such an opinion." *People v. Kubuugu*, 2019 CO 9, ¶ 11.

¶ 43    When a party does not object to an "officer's statements based on unnoticed or unqualified expert testimony . . . , we review the contentions for plain error." *People v. Conyac*, 2014 COA 8M, ¶ 53. As mentioned, an error is plain when it is so obvious and substantial that it undermines the fundamental fairness of the trial and casts serious doubt on the reliability of the verdict. *Douglas*,

¶ 41.  Because Phan did not object to Noble's testimony, we review for plain error.

### 3.    Analysis

¶ 44    Phan contends that the court reversibly erred by admitting Noble's statements as lay testimony because they were based on specialized knowledge, training, and experience.  We disagree.

¶ 45    When asked why he did not believe T.H.'s explanation of the incident, Noble responded that T.H.'s injuries were not "consistent with other suicides that I've been a part of, or any other trainings that I've been a part of in death investigations where we're looking at those kinds of things."  But T.H.'s injuries included stab wounds to the back of the neck and the kidney.  Based on the location of T.H.'s injuries, Noble's opinion — that her injuries were inconsistent with suicide — could be reached by an ordinary person.  In other words, an ordinary person could infer that a knife wound to the back of the neck or kidney was probably not an intentionally self-inflicted wound.

¶ 46    The prosecution also mentioned Noble's training and expertise in investigating suicides during closing argument.  Specifically, the prosecutor said, "Detective Noble told you that this isn't consistent

21

with suicide.  He's been a detective for quite some time."  Although the prosecutor's statements suggested that Noble's opinion was based on his expertise, they do not convert Noble's testimony into inadmissible, unqualified expert testimony.

¶ 47 Even if Noble's testimony was expert testimony improperly admitted as lay testimony, however, the error was not plain, as it was not obvious or "seriously prejudicial."  *People v. Ujaama*, 2012 COA 36, ¶ 43 ("[T]he error's effect must be so grave that it 'undermine[s] the fundamental fairness of the trial itself [so] as to cast serious doubt on the reliability of the conviction.'" (quoting *People v. Taylor*, 159 P.3d 730, 738–39 (Colo. App. 2006))).  Noble's statements were not obviously expert testimony.  The inconsistency of T.H.'s injuries with a suicide attempt is an opinion that an ordinary person could reach given the location of T.H.'s wounds.  Further, any error did not undermine the fundamental fairness of the trial or cast doubt on the reliability of the verdict because the jury had sufficient evidence to convict Phan, including his statements on the 911 call, the inconsistencies between the evidence and Phan's statements to officers that a third party was involved, and the testimony presented at trial.

## C. The Trial Court Did Not Err by Allowing Noble's Testimony on T.H.'s Story

¶ 48    Phan contends that Noble's testimony improperly opined on the veracity of T.H.'s statement that she intended to commit suicide. We disagree.

### 1.    Standard of Review and Applicable Law

¶ 49    We review a trial court's evidentiary determinations for abuse of discretion. *Davis v. People*, 2013 CO 57, ¶ 13. A witness may not provide testimony on whether another witness was telling the truth on a particular occasion, *Venalonzo*, ¶ 32, because questions regarding whether a witness is lying infringe on the factfinding role of the jury, *Liggett*, 135 P.3d at 729. But testimony is not barred under this standard "where the alleged inference regarding another witness's credibility is too attenuated." *People v. Penn*, 2016 CO 32, ¶ 37.

### 2.    Analysis

¶ 50    Phan contends that Noble's testimony that T.H.'s story did not make sense was an accusation that T.H. lied during her interview. Although Noble mentioned that T.H.'s story did not make sense, he explained that it was because T.H.'s injuries were inconsistent with

suicide.  Noble opined on T.H.'s injuries, not on the veracity of T.H.'s statement.

¶ 51    Even if Noble's statement was improperly admitted, however, the trial court did not plainly err because the statement did not undermine the fundamental fairness of the trial and cast serious doubt on the reliability of Phan's conviction.  *See People v. Dominguez*, 2019 COA 78, ¶ 28.  The challenged statements were short and were only a small part of Noble's much longer testimony. Defense counsel cross-examined Noble and asked him questions about T.H.'s story.

¶ 52    Further, during T.H.'s trial testimony, she admitted to recanting her initial story that she had stabbed herself.  Defense counsel cross-examined T.H. and asked about her contradictory statements.  Battan further testified that T.H. first indicated that she had stabbed herself and later indicated that Phan stabbed her. Defense counsel also had the opportunity to cross-examine Battan.

¶ 53    In short, two other witnesses, including T.H. herself, acknowledged that T.H.'s original story — that she stabbed herself — had changed.  Thus, even if improperly admitted, Noble's

statements about T.H.'s story were not seriously prejudicial and did not cast doubt on the reliability of Phan's conviction.

## III.   Disposition

¶ 54    We affirm the judgment of conviction.

JUDGE FOX and JUDGE BROWN concur.